THE UNION BANK OF GEORGETOWN *vs.* THE PLANTERS' BANK OF PRINCE GEORGE'S COUNTY, MD.—*June, 1838.*

When accounts are rendered by one banking institution to another, according to a proved usage between them, and when it was further proved, that in case either objected to the account of the other, it was the usage for the objecting bank to give notice thereof to the other, in the absence of such objection, the jury may infer that the bank receiving the account acquiesces in its correctness.

The circumstance that the bank receiving the account has suspended payment and general banking operations, can make no difference, when it was in proof that such bank was, notwithstanding, engaged in settling up its business.

When a bank holding deposites has suspended specie payments, the act of limitation runs against the depositors, from the time the fact of such suspension is known to them.

Although the county court may have erred in the direction given by them to the jury, this court will not reverse the judgment, if the party appealing has not been prejudiced by the error.

A party cannot avail himself of the exception in the act of limitations, in favour of accounts between merchant and merchant, concerning the trade of merchandise, without relying on such exception in his pleadings.

APPEAL from *Prince George's* county court.

THIS was an action of *assumpsit*, commenced on the 11th November, 1834, by the appellants against the appellees. The plaintiffs below declared for money had and received; money lent and advanced; paid, laid out, and expended; and upon an *insimul computassent.* The defendants pleaded *non-assumpsit ; non-assumpsit infra tres annos*, and *actio non infra*, &c. On these pleas issues were joined.

At the trial of the cause the following exceptions were taken :

1st EXCEPTION.—In this case, the plaintiffs, an incorporated bank of the *District of Columbia*, proved by a competent witness, that between the years 1820 and 1829, inclusive, it had extensive mutual dealings with the defendants, a banking corporation of the *state of Maryland*, consisting of mutual remittances, for collection and credit, which remittances as collected, according to the well established, and mutually understood, usage of banking, were to be by the

**440**    CASES IN THE COURT OF APPEALS

The Union Bank vs. The Planters' Bank.—1838.

party receiving them, credited on its books, to the party sending them, and to be held as deposites, and subject to the drafts of the said last party. That on the 16th December, 1828, and 22d day of August, 1829, the plaintiffs, according to the general banking usage in such cases, rendered to the defendants, in letters of those dates, addressed by the cashier of plaintiffs, respectively, to the cashier and president of defendants, accounts of such mutual dealings in detail. One account commencing April 1st, 1827, and ending December 16th, 1828, and the other extending thence to August 9th, 1829; showing a balance due to, and claimed by plaintiffs from defendants, by first account, of $676.31, and by the second account, of $797.02, which letters were in the following terms:

*Dear Sir*,—I cover for our credit with you, E. Belt's check on your bank for $485.75; J. R. Magruder's check on your bank for $9; and I enclose a copy of our account, showing a balance due us of $676.31. The account commences April 1st, 1827.           I am your ob't,

D. ENGLISH, *Cashier.*

UNION BANK OF GEORGETOWN, }
*August* 22d, 1829. }

J. R. MAGRUDER, *Pres't Planters' Bank.*

*Dear Sir*,—I cover a copy of our account since last rendered, shewing a balance due us of $797.02. We have of your notes $2,525, and J. Johnson's check for $22.89. The notes and check sent on Tuesday after you closed. July 25th, I wrote Mr. T. that we had $1,500, and you will see by a prior letter when we had $1,000; when I requested him to retain as many of ours, but received no answer to either. The notes falling due hereafter, I hope you will receive the amount, and transmit the money to us.

And the said president, on the 25th day of last month, acknowledged said letter and account, by the following letter, to wit:

PLANTERS' BANK OF PRINCE GEORGE'S COUNTY, }
*August 25th*, 1829. }

*Dear Sir,*—Your two letters of the 22d were received by the mail yesterday. One enclosing a copy of your account, showing a balance in your favour of $797 02. The only note for collection deposited by you, and not overdue, is Sasscer's, due 7–10th September, and this you had better direct to be returned to you, for he may insist upon paying it in the paper of this bank, which I am not prepared to say he would not have a right to do. Ray's draft on J. A. Magruder is not paid. Our board has come to the determination to make no distinction between depositors and bill-holders, under any circumstances. The paper which you hold, I would advise you to deposite, and take a certificate for it. Your account shall be examined and adjusted as speedily as possible; at present we are very much engaged.

In haste, dear sir, yours, very respectfully,

J. R. MAGRUDER, *President.*

Addressed and sent to the cashier of plaintiffs, and since that time the plaintiffs have received no notice from defendants of objection to, or denial of the said account, or any part thereof, or refusal to account with plaintiffs for the claim therein made, until a short time less than three years, before the 11th day of November, 1834, when the present action was brought.

And the plaintiffs then further proved, that, during all the period aforesaid, it was the general, well-established, and recognized usage of banks, in cases of such mutual dealing as aforesaid, that the same should be adjusted and settled in the following manner: one party desiring an adjustment, renders a full account of the mutual dealings between the parties, as exhibited by its books; which account is compared by the party receiving it with its books, and if any discrepancies appear on such examination, a statement of the differences, called a reconciling statement, is returned for explanations to the party furnishing the original account; and so mutual explanations are made and received, backwards and forwards,

by the parties, until all the differences are reconciled, or finally denied. And that it was, and is, the usage and custom of banks to infer and assume, from the absence of any report of differences on an account rendered as aforesaid, the correctness of such accounts; that there *was* no difference as to such usage or custom, when one of the banks had suspended specie payments. And thereupon the plaintiffs prayed the court to instruct the jury that on the proof aforesaid given in evidence, they may infer an acquiescence on the part of the defendants, in the correctness of such original account so rendered as aforesaid by the plaintiffs, although it was also given in evidence by defendants that on the 10th of August, 1829, specie payments were suspended by defendants, and they have not since resumed active banking operations, which suspension was known to plaintiffs in August, 1829, but have confined themselves to adjusting and settling their old business.

The Court, Dorsey, A. J., refused to give the instruction, and the plaintiffs excepted.

2d Exception.—In addition to the evidence contained in the preceding bill of exceptions, which it is agreed shall make a part of this exception, the plaintiffs further to support the issues on their part joined, offered evidence to the jury of a balance, amounting to several hundred dollars due them from the defendants, resulting from the mutual dealings between them as banking institutions, as set forth in said former bill of exceptions terminating on the 8th of August, 1829. And they further read to the jury the following letters; the first two from the plaintiffs to the defendants, and the latter from the defendants to the plaintiffs.—See ante page 440–41.

And also proved, that a few months previous to the institution of this suit, Robert W. Bowie, the president of the *Planters' Bank*, said to the president of the *Union Bank*, that he would submit the account of the *Union Bank* to a board of directors of his bank, but did not admit or deny the correctness of said account. Thereupon the defendants proved, by competent testimony, that at the date of the plaintiffs' letter

of the 22d August, 1829, above referred to, it was known to them that the defendants had suspended specie payment, and discontinued active banking operations, which event occurred on the 10th of August, 1829, as was also proved by the defendants; and they further proved, that a public notice, announcing that fact to the public, was published in the newspapers in the District of Columbia, Baltimore, and Annapolis, at the time, in the following terms:

" Whereas, the very general prevalence of reports injurious to the credit of this institution, have produced such incessant demands for specie, that in the opinion of the board it has become necessary, at least for a period, to suspend the redemption of its paper. In adopting this course, the board of directors consider it their duty to assure the creditors of the institution, that the funds of the bank are, in their opinion, abundantly sufficient to discharge all its obligations, so soon as the same can be made available; and they are also justified in the belief, that the period when this can be effected is not far distant. The board likewise make known to the stockholders that, so far as they can at this time determine of the situation of the bank, they entertain a decided conviction that there will not be ultimately a considerable loss; indeed, they are persuaded there will be none, because it is not believed that the amount of bad debts will be more than equal to the surplus profits. The board, therefore, whilst they earnestly advise the bill-holders and depositors to submit to no sacrifices, feel themselves perfectly warranted in holding out to the stockholders the prospect of full indemnity. It is in contemplation to appoint a committee to investigate carefully the affairs of the bank, and when the same shall be completed, a full exposition of its situation will be laid before the public. *Resolved*, therefore, that, until further notice, the paper of the Planters' Bank of Prince George's County will not be redeemed, and that the president cause this preamble and resolution to be communicated to the public, by inserting a copy in one or more newspapers in the District of Columbia, and the cities of Baltimore and Annapolis, and by putting one at the door of the banking-house."

And thereupon the defendants, by their counsel, prayed the court to instruct the jury that if they should believe, from the evidence in the cause, that more than three years had elapsed between the commencement of the present suit and the termination of all dealings between the plaintiffs and defendants, that in that case the plea of limitations is a bar to the plaintiffs' recovery in the present action, unless the plaintiffs can produce some recognition of indebtedness, or promise, by the defendants, within three years next before the commencement of this suit, or since, to pay the plaintiffs' claim.   And secondly, the defendants, upon the evidence, further prayed the court to instruct the jury that the cause of action, if any, in this cause, accrued at least as early as the jury shall find that all dealings between the parties terminated ; and if the jury shall find that said dealings terminated three years, or more, before the institution of the present suit, that then the plea of the act of limitations is a bar to the plaintiffs' right of action, unless the jury shall find from the evidence, that within three years next preceding the impetration of the original writ in this cause, or since, the defendants acknowledged an indebtedness to the plaintiffs, or promised or assumed to pay the amount of their claim, or some part of it.   Which instructions, so prayed by the defendants, the court granted.   The plaintiffs excepted.

The verdict and judgment being against them, they brought the cause to this court, where it was argued before BUCHANAN, C. J., ARCHER, DORSEY, CHAMBERS, and SPENCE, J.

C. Cox, for the appellants.

This is an action brought in the Prince George's county court by the appellants, a foreign incorporated banking company, against the appellees, a domestic company of like character, to recover a balance due on their mutual dealings as bankers, consisting of reciprocal remittances of money, bills, checks, and notes for collection and credit, and which, when collected were, according to the well established usages of

banks and the common understanding of the parties, held as *deposites* for the use of the remitting party, and to be paid over on their *draft*.    See 1st and 2d bills of exceptions.

In most of its essential features, the claim of the appellants is similar to that of the Farmers and Mechanics' Bank of Georgetown, against the same defendants, tried at the last term of this court.    The counsel, too, in both cases are the same here and in the court below; and in both cases, it was the common understanding of the counsel, and so conceded to the court and jury, that bank deposites are to be paid to the depositor on demand, at the counter of the bank; and with this conceded understanding, both causes were tried below.    This understanding of counsel is noticed, in the opinion of this court, in the case tried here at the last term, after both the trials below, and will now be recognized.    In the opinion of this court referred to, it is settled that this usage as to bank deposites, will not be judicially recognized without proof.    But this court seeing that the usage was, or might probably have been, susceptible of proof, would not be disposed, in the circumstances of this case, to conclude the appellants from the benefit of such proof, did it not sufficiently appear on the record; and, it is submitted, would feel the justice of remitting the cause to the court below under a *procedendo*, that the rights of the appellants might not be sacrificed by reason of a defect influenced by the appellees' concession.    It is believed, however, that the record does exhibit competent evidence of the usage; for it is there shown, that the deposites were payable only on the drafts (or checks) of the depositors on the bank.

The question then occurs on the operation of the act of suspension of the defendants, to change the pre-existing fiduciary relation of the parties.    The general principle, that such act supersedes the necessity of draft or other demand by the depositor, since the decision of this court already referred to, is become *res judicata*, and is no longer open for discussion. But that decision does not establish that the former fiduciary relation between the parties may not be renewed and conti-

nued, with modifications adapted to the altered position of the suspending bank, so as to prevent, alike, an action and the running of the statute of limitations; and the present position of the banks in general throughout the country, admonishes the court of the mischief that such an extension of the decision might produce, and will constitute a strong argument against it. As is well known, we have in our country a double currency; first the constitutional currency of coin, and secondly, the conventional currency of paper, the convenience of which has caused it for the most part to supersede the use of the other. The great object of banks is to create the paper currency, and it has a credit and value graduated by its convertibility into coin. If immediately convertible, it is of equal value with the coin; if otherwise, it still has a value and credit graduated by the estimate of its ultimate convertibility. This is illustrated by the market of suspended bank paper at different periods of the banking history of the country, both when the suspension has been general, and when it has been only partial. A convention may, therefore, well be entered into between depositor and suspended bank, and be sanctioned by law, whereby the pre-existing fiduciary relation between the parties shall be continued, with the only modification (adapted to the changed position of the bank) that during the period of the suspension, the drafts of the depositor shall only be payable in the paper of the suspended bank, or its equivalent. Such convention may be express or implied. It is by no means unreasonable, in cases like the present, where the ultimate solvency of the suspending bank is unquestionable, and there is a certain demand by the debtors of the bank for such paper to discharge their debts, in which it is to all intents as available as coin. In the absence of any negation by the suspending bank, its accession to such convention is fairly to be inferred; and it is submitted, that it may be fairly held to be a case for the election of the depositor, whether to consider the fiduciary relation as continued or closed.

Here, however, it is submitted, that the mutual accession

of parties to the convention, for the continuance of their fiduciary relation, may be fairly inferred from the record; from the limited extent of the suspension, as shown by the preamble and resolutions of the defendants; from the subsequent correspondence and verbal communication between the parties and their agents; and the transmission and sanction, as shown in the first bill of exceptions, of the mutual accounts. It may be here observed, too, that this preamble and resolution of suspension, extend only, by their terms, to the bill-holders, and not to the depositors of the banks. These discriminations between bill-holders and depositors are common, and many instances are now being exhibited, by different banks of the country. The utmost length, therefore, that the court below could properly go for the extension of the act of suspension to depositors, was to leave it as a matter of evidence and construction for the jury; and so far as any of the instructions, or refusals to instruct, by that court proceed, on the *assumption* of such extension, it is error.

The court's refusal to grant the prayer of the appellants in the first bill of exceptions was erroneous, alike on the proof given of the usage and custom of banks, as on general principles. *Starkie on Evid. pt.* 4, *p.* 37.

The court also erred in the instructions contained in the second bill of exceptions, that without reference to the period of the appellees' suspension, the statute of limitations commenced to run against the appellants' claim from the termination of the dealings between the parties. These last instructions clearly assume to decide peremptorily that the ordinary relation between bank and depositor authorizes an immediate action by the latter without previous demand and refusal of the deposites; and reject in advance any evidence that the depositor might have been prepared to offer, of an usage requiring a previous demand at the counter. If there be error in either bill of exception, the court will reverse the judgment and award a *procedendo*, for it will not undertake to pronounce on the ability of the appellants if not thus interrupted in their proof, to make out their demand by competent

evidence, covering every requisition of the law of this court as settled by the case of the Farmers and Mechanics' Bank of Georgetown.

Should the court hold the aforegoing positions untenable, this alternative view is respectfully submitted:

The appellants are admitted on the record to be a foreign banking company, as the appellees are a like domestic company. These companies are merchants. The term merchant is in England, according to the general acceptation of the word, *confined* to him who buys and sells any commodities in gross, *or deals in exchange:* that traffics in the way of commerce either by importation or exportation; or that carries on business by way of commission, vendition, barter, permutation, or *exchange*, &c. *Beame's Lex. Merc. Ed. of* 1752, *p*. 31. The word merchant, includes every description of traders. *Mayor of London vs. Wilkes, Salk.* 445. 12 *Petersdorff, Ab.* 614. Drawing and re-drawing bills of exchange for large sums and a continuation of it, is a trafficing in exchange. *Richardson, et al, vs. Bradshaw, et al,* 1 *Atk.* 128. Drawing bills of exchange for large sums is merchandising. *Hankey vs. Jones, Cowp.* 746, 751. Now this "*dealing in exchanges*" is one great object of all banks, and as such is recognized and allowed in express terms in every known charter of incorporation. And the accounts in the present case are such "as concern the trade or merchandise between merchant and merchant which are not residents within this province," in the terms of the act of assembly, 1715, ch. 23, sec. 2. *Bond, et al, vs. Jay,* 7 *Cranch,* 350. In the trial below several issues were submitted to the jury, one, the general issue, and others on pleas of the statute of limitations; and the record shows, that under the former the appellants showed a balance due them of several hundred dollars. On this issue then, the appellants were entitled to a verdict, and the general instructions of the court below, *on all the issues*, that the appellants were not entitled to recover, so far as applicable to this issue, was erroneous. Is this error immaterial? It is respectfully submitted that it is not,

and that on a verdict in favour of the appellants on this issue, they might have claimed a judgment in their favour. It may be admitted that under the issues on the pleas of the statute of limitations, did they stand alone, the appellants could not have given in evidence their character as foreign merchants, and that this should have been made a matter of special replication to the pleas. But the record shows an admission of the character of the appellants as foreign merchants, (under which admission the cause was tried below,) and proof under the general issue of a balance of several hundred dollars due them from the appellees, the result of their mutual dealings as banks in the proper business of banks, which *dealings* were not within the purview of the statute of limitations, but expressly excepted from the operation thereof. It is not the case of a mere personal privilege, as of infancy, &c. where the subject matter is expressly within the statute, but the case shows a claim established to which the issues on the statute of limitations never would be applicable in any circumstances.

J. Johnson and Pratt, for the appellees.

This suit was commenced by the appellants against the appellees on the 11th of November, 1834, and was brought to recover a balance claimed to be due the plaintiffs, upon accounts between them as banking institutions, the last item of which was on the 9th of August, 1829. Five years, therefore, and more, had elapsed, from the termination of all dealings between them and the institution of the suit.

To the declaration which contains the money counts, and an *insimul computassent*, the defendants pleaded *non-assumpsit* and limitations, to which there were issues, and the first question is, whether the statute is a bar to the action.

It is not very clear, that any question upon the act of limitations is in fact raised by the plaintiffs' prayer in the first exception. After offering proof of the claim, consisting of dealings between the parties as incorporated banks from 1820 to 1829, and letters from each to the other, written by their

respective agents, and proof of the usage in the case of such accounts, the plaintiffs prayed the court to instruct the jury, that from such proof they might infer an *acquiescence* by the defendants, in the account rendered by the plaintiffs, which prayer the court refused to grant.

Now, from the frame of this prayer, and the evidence upon which it is founded, it is rather to be inferred, that the purpose of the plaintiffs was to establish the *existence* of their claim, and not to save it from the operation of the statute of limitations.

The plaintiffs first proved, that by their letters of the 16th December, 1828, and 22d August, 1829, they rendered their accounts to the defendants; the last ending on the 9th of August, 1829, and showing a balance then claimed by the plaintiffs, of $797.02. That according to the usage among banks, they, the plaintiffs, had a right to expect, that if any errors were alleged to exist in these accounts, they would be pointed out by the defendants, &c. and that in the absence of such allegation of error, the plaintiffs had a right to assume their correctness; and the amount of their prayer is, that the jury may from this proof do the same thing—that is, may infer the acquiescence of the defendants in the correctness of the plaintiffs' accounts.

The prayer does not assume that such acquiescence will obstruct the running of the statute of limitations, nor does the court say that such will or will not be the case, but simply, that the circumstances adduced by the plaintiffs will not authorize the jury in inferring the defendants' acquiescence in the correctness of the account rendered them by the plaintiffs.

But waiving this objection, and conceding that the question of limitations is presented by this exception, it is insisted that the decision of the county court is perfectly correct.

There is not in this case any evidence of a usage, that the money, bills, or notes, sent to, or deposited with the defendants by the plaintiffs, for collection, were to be paid at the counter of the bank, nor do the prayers assume, nor will the

argument yield any such position. That any usage of the kind is proved is not pretended.

The prayer in the first exception came from the plaintiffs, and for its assumptions the defendants are not responsible; but in fact it assumes nothing in relation to the mode of payment. The defendants' prayers in the second exception are, simply, that limitations are a bar, if the jury find that more than three years had elapsed from the termination of the dealings between the parties and the commencement of the suit, and that the cause of action accrued as early as the jury shall find the dealings did terminate, unless an acknowledgment should be proved.

These prayers, therefore, assume nothing in reference to the mode of payment.

But suppose such to have been the case, this court has already decided, in the case of the Farmers and Mechanics' Bank against the same defendants, that such usage cannot be judicially recognized by the court, without *proof* of its existence; though in that case, the court considered the existence of the usage to have been assumed in the prayers, and yielded impliedly in the argument; neither of which is done here. The observation in the notes of the appellants' counsel, that the counsel for the *Planters' Bank* are the same in this case as in the former, can hardly be of sufficient force to transplant the assumptions of the one case to the other. There would be about as much propriety in taking the facts of that case and putting them to this, because the counsel happened to be the same.

In the case of the Farmers and Mechanics' Bank, the defendants' first prayer was, "that if the jury should find that the dealings between the parties terminated in 1829, and that from that time to the present the defendants had recognized no indebtedness, *but had refused to settle and allow the plaintiffs' claim*, that limitations is a bar."

The Court of Appeals say, that, "the county court was clearly in error in refusing this prayer, the act of limitations being a conclusive bar to the action, *whether the defendants*

*have refused to settle or allow the claim asserted by the plaintiffs or not."*

And they further say, that the other four prayers in the first exception should have been granted, not upon the special grounds assumed by the prayers, but upon the general effect of the statute, independently of such special grounds.

This decision, it is confidently insisted, is decisive of this case, there being not one single particle of evidence of that usage, from which alone a contrary determination could be anticipated.

But there are other grounds for the affirmance of the judgment of the county court in this case, even if the usage as to payments at the defendants' counter had been proved.

It is in evidence here, that the defendants stopped payment, and discontinued active banking operations on the 10th of August, 1829, and that, that fact *was known* to the plaintiffs on the 22d of the same month and year, being more than five years before they commenced their suit.

In the case of the Farmers and Mechanics' Bank, the defendants in their second exception proved the fact of suspension, but did not prove that the plaintiffs *knew of it;* and, upon that ground alone, this court decided that the defendants' prayer in this exception should not have been granted, upon the assumption of the existence of the usage in reference to payments at the counter; though this court reversed the judgment of the county court even in this exception, because they assumed such usage without proof, which the Court of Appeals say they were not warranted in doing; and the act of limitations being a bar, in the absence of such proof, the defendants' prayer in this exception should have been granted.

In considering the opinion of the county court, in the second exception, in the case of the Farmers and Mechanics' Bank, this court, in the first place, assume, that they are to take judicial notice of the before mentioned usage, and upon that assumption say, that limitations would not run against the plaintiffs, unless payment of their claim had been refused

by the defendants, or some act had been done by the defendants (a knowledge of which is brought home to the plaintiffs) dispensing with the necessity of a demand of payment at the counter of the defendants. And the court further say, that " *such dispensation is abundantly furnished by the acts of the defendants on the 10th of August,* 1829." But this court go on to say, that a knowledge of those acts not being brought home to the plaintiffs, or not with sufficient conclusiveness to justify the county court in assuming the fact, they did right in refusing the defendants' prayer upon that ground.

The acts of the 10th of August, 1829, referred to by the court, were the suspension of specie payments, and discontinuance of active banking operations. These acts, the court say, if known to the plaintiffs, would (even in case the usage referred to was established) dispense with the necessity of a demand at the counter of the defendants, and from the time of such knowledge put the act of limitations in motion against the plaintiffs. In the case now before the court, express knowledge of those acts is brought home to the plaintiffs, as early as the 22d of August, 1829, more than five years before suit was brought, and consequently, even assuming the usage to be proved, the claim is effectually barred.

The counsel for the appellants adverting to the general condition of the banks throughout the country, admonishes the court against the danger of extending the doctrine established in the case of the Farmers and Mechanics' Bank, beyond the limits which the facts of that case render imperatively necessary ; and whilst he admits that the question is now no longer open, that a suspension of specie payments by a bank supersedes the necessity of a demand at the counter, either to create the right of immediate suit, or to put the act of limitations in operation, nevertheless contends that other circumstances may arise, which will revive or continue the former fiduciary relations of the parties, and thus prevent the statutory bar from attaching.

Our first answer to this view of the case is, that according to the express language of this court, in the case of the Far-

mers and Mechanics' Bank, mere fiduciary relations between the parties to a suit, will not *per se* prevent the running of the act of limitations. In courts of law, trusts have no force in opposition to the statute, except as indicating the *time* at which the cause of action accrued, as had been before decided in the case of *Green vs. Johnson, et ux*, 3 *Gill and Johns.* 391; in which it was further held that, at law, there was no such head of pleading as trusts.

Our next answer is, that supposing a conventional arrangement between depositor and suspended bank, that the drafts of the former should be paid in the paper of the suspended bank, or its equivalent, during the suspension, (as is supposed in the argument of the appellants' counsel,) and thus render a demand necessary at the counter of the bank of payment in such medium, before a right of action would arise, there is not in this case a *shadow of proof* of any such convention. Before, therefore, the court can adopt any such hypothesis, they must assume the existence of such convention, in the absence of all attempts to prove it; and in addition to that, they must assume that payment in the medium spoken of, was only to be made *at the counter of the bank*, without any evidence of a usage to that effect. And this the court is asked to do, with the fact of their opinion in the case of the Farmers and Mechanics' Bank against these appellees; though in that case, they expressly say, that they can take no judicial notice of such usage without proof; although its existence was impliedly, at least, assumed in the defendants' prayers, and in the argument on both sides in this court.

But apart from these considerations, which are deemed conclusive upon this point, it is not perceived how the present condition of our banking institutions can have any influence upon the decision of this case, even if the court can take judicial notice of their condition.

The suspension of the *Planters' Bank* occurred on the 10th of August, 1829, and the general suspension not until May, 1837. It is difficult to imagine, therefore, how arrangements which are supposed to be the result of a state of things oc-

curring seven years afterwards, can be attributed to the trans-action in question.    Besides, the *Planters' Bank* not only sus-pended specie payments, but *she discontinued banking opera-tions,* which of itself repudiates the idea of arrangements ap-plicable alone to institutions continuing in the full exercise of all their functions, but which, from peculiar circumstances, are unable, for a season, to meet their engagements to the public.

But there is another answer to this notion, which must be insurmountable.    The *Planters' Bank* had failed, and the *Union Bank,* it is conceded for the purpose of argument, was a depositor, and of course a creditor.

In this state of things the counsel for the appellants sup-poses, and asks the court to suppose, that an arrangement was made between these two banks, by which the *Planters' Bank* was to retain the money, to be paid on demand at her counter, *in her own notes.*    Why, how would this better the condition of the *Union Bank?*    The notes of her debtor would be of no more value than a credit upon her books, especially as it appears, from the letter of the president of the defendants, that they had determined to place the note-holders and depositors upon the same footing.

Thus, therefore, the court is asked to imagine a conven-tion, without a tittle of proof; to attach to that a usage, which they have already said they cannot assume without proof; when it is perfectly manifest that the convention, if made, would in no respect have bettered the condition of the creditor.    If the probabilities of the arrangement were ever so strong, this court could not, and would not make it the basis of judicial action without proof; and they will hardly do so, when every presumption resulting from its entire futility is against it.

The appellants' counsel does not contend that the proof in the second exception, that the president of the defendants said he would submit the plaintiffs' account to the directors, takes the case out of the statute.    That it does not is clear,

from the cases of *Oliver vs. Gray*, 1 *Harr. and Gill*, 216; and *Frey vs. Kirk*, 4 *Gill and Johns.* 509.

There was no acknowledgment of a present subsisting debt, from which a promise could be implied, as is essential, according to those decisions.

The plaintiffs' counsel contends, that if the county court erred, in either exception, this court will send the case down upon *procedendo*. This is not so. If upon either exception, and especially the last, they agree with the defendants, the the case will not be sent back. If the law of that exception is right, the final judgment must be for the defendants. In the case of *Morgan vs. Morgan*, 4 *Gill and Johns.* 395, this court refused a *procedendo*, even when they reversed the judgment of the county court rendered for the defendant, because they said the plaintiff could ultimately recover nothing.

The same thing was decided in *Berry vs. Harper*, *same book*, 467; and in *Green vs. Johnson, et ux*, 3 *Gill and Johns.* 389. In this latter case, which was an action of assumpsit, the judgment below was for the plaintiff, but this court being of opinion that limitations which were pleaded was a bar, reversed that judgment, and refused a *procedendo*. That was going much farther than is necessary here, for in this case all we ask is, that no *procedendo* shall be awarded if the judgment is affirmed; and we cannot suppose that a *procedendo* will be ordered, to re-try a case which was decided right, when it was refused when the first judgment was wrong; especially when the form of the action and the defence is precisely the same in both cases.

The appellants' counsel present one other view of this case. He assumes that these two banking institutions are *merchants*, and asks that the exceptions in favour of merchants' accounts be applied to the transactions between them.

Now, in the first place, if the plaintiffs designed to avail themselves of the savings in the act of limitations, in favour of accounts between merchant and merchant, he should have *replied* the savings, and not taken issue upon the plea of limitations, as he has done. 1 *Chitty*, *Pl.* 555.

By taking issue upon the pleas, the plaintiffs " admitted their legal sufficiency and applicability," as this court say in the case of *Green vs. Johnson, et ux*, 3 *Gill and Johns.* 396. And further, that by doing so, " they admitted upon the record that, if true, the verdict must be for the defendants."

But waiving this objection, is it true that merchants' accounts are out of the reach of the act of limitations, *if there be, as here, no item within the prescribed time?* In the case of *Coster vs. Murray*, 5 *Johns. Ch. R.* 522, Chancellor Kent, after reviewing all the cases upon the subject, comes to the conclusion that accounts, even between merchant and merchant, are within the statute, if there be no item within the time limited by the statute.

The Court of Appeals of *South Carolina*, in 1826, concurred with Chancellor Kent. *Angell on Limitations*, 214.

And from the language of this court, in *Green vs. Johnson, et ux*, 3 *Gill and Johns.* 394, it may fairly be inferred, that they are not disposed to increase the number of exceptions.

The appellants' counsel has cited several cases, to show that banks are to be regarded as *merchants;* that all persons having *mutual dealings*, are entitled to the benefit of the exception in favour of accounts between merchant and merchant.

That this exception applies to all persons having mutual dealings, *if the last item of the account is within the prescribed time*, may be admitted ; and yet the plaintiffs' claim will not be saved, unless it can be shown that these banks are *merchants* within the meaning of our act of assembly, *and that their accounts concern the trade of merchandise;* for there is no item on either side of the account within three years. It may be admitted, we say, (though the admission is only made for the sake of the argument) that where the parties dealing together are merchants, and the subject of their dealings merchandise, that it is not necessary that any one item in the account should be within three years ; in other words, that such accounts are not embraced by the statute ; and yet, as these banks are not merchants, nor the subject of their dealing merchandise, the

claim is barred by the statute, there being no item within three years.

All the cases upon the subject show, that where the accounts are not between merchants, strictly so called, and the account does not concern the trade of merchandise, there must be some one item within the time to preserve those which are not, from the bar of the statute. The court will find the distinction between the mutual dealings of parties who are not merchants, and those accounts which concern the trade of merchandise between merchants, spoken of in *Angell on Limitations,* 205, 206. And that it is only in reference to the latter, that it has ever been decided that there need be no one item within the time limited, to save the rest of the account from the statute. Unless the parties are merchants, and their accounts concern the trade of merchandise, some one item within the prescribed period is indispensable. If there be none such, the whole claim is barred ; and that being the case here, the effect of the plea would not be removed, even if the plaintiffs, *by their pleadings,* had put themselves in a position to raise the question, which they have not done.

The case of *Bond, et al, vs. Jay,* 7 *Cranch,* 350, was between *merchant* and *merchant,* and concerning the trade of *merchandise,* strictly so called, and the exception was presented by the replication to the defendants' plea of limitations.

Suppose we are in error upon this point, and the plaintiffs might have availed themselves of the exception in favour of merchants' accounts, by their declaration or a special replication to the plea of limitations, this court will not, if the judgment of the county court was right upon the questions decided by them, remand the record, for the purpose of enabling the plaintiffs to amend their pleadings.

In the case of *Watchman & Bratt vs. Crook, et al,* 5 *Gill and Johns.* 239, an application of the kind was refused after argument.

But it is said, that if the plaintiffs' prayer in the first exception ought to have been granted, the court was clearly

wrong in instructing the jury *upon all the issues against them. No such instruction was given.* In the first exception, the court simply refused the plaintiffs' prayer ; and in the second, granted those of the defendants, which asserted that the claim was barred by limitations, if the jury from the evidence believed certain facts.

The prayers refer *exclusively* to the operation of the act of limitations, and the court granted them in the terms in which they were asked, without the slightest reference to any other issue.

Upon the first exception, the appellees' counsel would make this additional remark. If the omission of the defendants to point out errors in the accounts transmitted them by the plaintiffs, is evidence of acquiescence, as is insisted by the plaintiffs, then their claim rests upon an account stated, and as such is barred by limitations, even if they are viewed as merchants, and the account concerning the trade of merchandise, within the strict sense of the statute. *Freeland vs. Herron, et al,* 2 *Cond. S. C. R.* 449. *Angell on Limitations,* 199.

ARCHER, Judge, delivered the opinion of the court.

We think the court were in error in the first bill of exceptions, in not granting the plaintiffs' prayer ; that the jury were at liberty to infer from the silence of the defendant, their acquiescence in the correctness of the account rendered by the plaintiffs to the defendants.

These accounts, according to the proof offered in this exception, were rendered to the defendants according to the usage as proved, and as it was further proved, that in case there should be any exception taken to the accounts, such exception or disagreement, was, by usage, notified to the plaintiff, and no such notification being given, it was a reasonable inference, that the defendant thus receiving the account, had acquiesced in its correctness, and the inference was the stronger in this case, as according to the practice and usage of the banks, in case of failure, to notify differences in the respective accounts of the banks, for the bank trans-

mitting its account, to infer that it was not objected to, and was admitted to be correct.

The suspension of specie payments in August, 1829, and the declension of banking operations from that time, by the defendants, can make no difference in the sufficiency of the evidence, to enable the jury to draw the deduction sought by the plaintiffs, as it was in evidence that the defendants, *The Planters' Bank*, were engaged after the suspension, exclusively in the settlement and adjustment of their business, and the plaintiffs had a right to expect the observance of the usage in regard to the settlement of their mutual accounts, notwithstanding they had suspended banking operations, as they were still engaged, and exclusively engaged, in the settlement and adjustment of their accounts.

The second bill of exceptions arises on the statute of limitations. The defendants pleaded *non-assumpsit ; non-assumpsit infra tres annos ;* and *actio non-accrevit infra tres annos.* The plaintiffs took issue on the first plea, and issue was joined on the second and third pleas; so that the only questions the jury had to try, or which could legitimately be submitted to them, were, whether the defendants had assumed to pay the claim ; whether they had assumed to pay within three years ; and whether the action had accrued within three years anterior to the institution of the suit.

There is certainly no evidence in any of the bills of exceptions, of any admission by the defendants, which could prevent the running of the statute.

The claim of the plaintiffs consists of remittances for collection, and of credits, which according to the usage as proved, when collected, were placed to the credit of the bank sending; and to be held as deposites, liable to draft. The defendants, *The Planters' Bank of Prince George's County*, suspended payment on the 10th of August, 1829, and by the letter of the cashier of the defendants, dated 25th August, 1829, the plaintiffs are informed, that the defendants had resolved to make no distinction between depositors and bill-holders : and it is in evidence, that this suspension of pay-

ment, was known on 22d August, 1829, to the plaintiffs. The time then from which the statute of limitations would commence running, according to the opinion of this court, in *The Farmers' and Mechanics' Bank of Georgetown vs. The Planters' Bank of Prince George's County*, would be the period when the plaintiffs *first* had knowledge that the defendants had suspended specie payments : and not the period when the transactions between the parties terminated, as assumed by the court in their directions to the jury.

The dealings between the parties terminated according to the evidence on the 9th day of August, 1829. The court were therefore in error in instructing the jury that the cause of action accrued, at least, as early as the jury should find all dealings between the parties terminated, and that limitations commenced to run from such period instead of dating the commencement of the running of the statute, from the day when the plaintiffs *first* had knowledge of the suspension of payment by the defendants.

But the plaintiffs, from the evidence in the cause, were clearly barred of their action, more than three years having elapsed from the date of knowledge by the plaintiffs of the suspension of payment by the defendants : and the plaintiffs are in no manner, therefore, prejudiced by such erroneous direction. For, whether the one period or the other be assumed, as the day from which to date the running of the statute, the plaintiffs are equally barred. Nor do they receive any prejudice by the erroneous refusal of the court to grant their prayer contained in the first exception, for, by the evidence in the cause, their claim was clearly barred by limitations.

If, as is supposed, this were a case of accounts between merchant and merchant, concerning trade and merchandise, to have availed themselves of it, the plaintiffs should have specially replied the fact to the defendants' plea; until this was done, the disclosure in evidence of the fact, could have no effect on the issue which the jury were sworn to try.

**JUDGMENT AFFIRMED.**